*58
 
 Hart, J.
 

 This case presents, for determination substantially the following questions: (1) Does the so-called trust instrument create a valid trust? (2) May one person give a power to another by a trust instrument which is not executed or intended to operate as a will and which enables the donee, after the donor’s death, to name the beneficiary who shall receive the trust fund? (3) Assuming that a power can be created by a trust instrument vesting the right in the donee to select the beneficiary who shall receive the trust fund by action of the donee taken after the donor’s death, may such donee under the terms of the trust instrument involved in this case select one beneficiary and later revoke the designation and appoint another?
 

 The suggestion was made during the hearing of this case that the so-called trust involved herein was void because it amounted to a mere agency, rather than a trust, that it was an attempted testamentary disposition of the donor’s property after his death without the formalities of a will, and that the power granted under the trust instrument was too informal, vague and indefinite with the result that the donee of the power was called upon to make a disposition of the property of the donor rather than to exercise a power.
 

 The trust instrument gave wide control to the donor over the fund during his lifetime. But the legal title passed to the trustee and the fact that a donor retains the income for life and the right to revoke the trust in his lifetime does not render it void.
 
 Cleveland Trust Co., Trustee,
 
 v.
 
 White,
 
 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475, and annotation 482;
 
 Schofield, Trustee,
 
 v.
 
 Cleveland Trust Co.,
 
 135 Ohio St., 328, 21 N. E. (2d), 119;
 
 City Bank Farmers Trust Co., Trustee,
 
 v.
 
 Charity Organisation Society of City of New York,
 
 238 App. Div., 720, 265 N. Y. Supp., 267, affirmed 264 N. Y., 441, 191 N. E., 504;
 
 Goodrich
 
 v.
 
 City Natl. Bank & Trust Co.,
 
 270 Mich.; 222; 258 N. W.; 253,
 

 
 *59
 
 On this subject, 1 Restatement of Law of Trusts, 174, Section 57, says:
 

 “(1) Where by the terms of the trust an interest passes to the beneficiary during the life of the settlor, the trust is not testamentary merely because the settlor reserves a beneficial life estate or because he reserves in addition a power to revoke the trust in whole or in part and a power to modify the trust.”
 

 The right of revocation standing alone, is not tantamount to a property right in the settlor; it has none of the attributes of property; and, when the founder of .a trust, who reserves the power of revocation dies without having exercised that power, there is nothing else to do to complete the creation of the trust, as the right of revocation is not an estate or property that can pass at death, but is merely analogous to a power of appointment.
 
 Dolan’s Estate,
 
 279 Pa., 582, 124 A., 176, 49 A. L. R, 858.
 

 Claim is made that Judge Conner, in reserving the right to direct the trustee as to the manner of reinvesting funds of the trust,
 
 ipso facto,
 
 created an agency and not a trust. This claim is not supported by the authorities and has no basis in reason. Solicitude on the part of the donor for the safety and integrity of trust funds does not
 
 per se
 
 indicate that he is dealing with his own property. “By the weight of authority, a trust, otherwise effective, is not rendered nugatory because the settlor reserves to himself the following rights and powers: (1) The use of the property and the income therefrom for life; (2)
 
 the supervision and direction of investments and reinvestments;
 
 (3) the amendment or modification of the trust agreement; (4) the revocation of the trust in whole or in part; (5) the consumption of the principal.” (Italics ours.)
 
 Cleveland Trust Co., Trustee,
 
 v.
 
 White, supra,
 
 at page 6. See, also,
 
 Houston’s Estate,
 
 276 Pa., 330, 120 A., 267;
 
 Jones, Admr.,
 
 v.
 
 Old Colony Trust Co.,
 
 
 *60
 
 251 Mass., 309, 146 N. E., 716; 3 Cincinnati Law Review, 361; 43 Harvard Law Review, 521, 533.
 

 The owner of property may declare himself trustee thereof instead of transferring the property to another person in trust. In such case the settlor, since he is trustee, necessarily controls the administration of the trust. Of course he does not have an unlimited power of control since it can properly be exercised only in accordance with the terms of the trust. 1 Restatement of Law of Trusts, 176, Section 57, subsection (1), comment
 
 b.
 
 1 Restatement of Law of Trusts, 120, Section 37, comment
 
 a,
 
 says:
 

 “There is no specific limit to the nature or extent of the powers which the settlor may reserve. He may reserve a power to revoke the trust, or a power to alter or amend the trust, either in addition to the power to revoke or in exclusion of such a power. He may reserve the power to control the trustee in making investments or in disposing of investments, or to veto a particular investment. ’ ’
 

 All that is necessary is that such
 
 control be exercised by the settlor for the benefit of the trust and its beneficiaries, and not for his own individual interest as owner of the fund.
 

 In this connection, 1 Restatement of Law of Trusts, Section 57, subsection (2), says:
 

 “(2) Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary and is invalid unless the requirements of the statutes relating to the validity of wills are complied with.”
 

 This rule, however, furnishes no test or statement of fact as to what quantum of control as to details of administration will make the trustee the agent of the
 
 *61
 
 settlor. It simply says, in effect, that when the situation is such that the trustee is the agent of the settlor, an agency is created.
 

 Commenting on subsection (2), above quoted, 1 Restatement of Law of Trusts, 179, comment
 
 g,
 
 says:
 

 “The rule stated in subsection (2) is applicable, however, only whére the settlor reserves such power of control that the transferee is his agent. The intended trust is not testamentary merely because the settlor reserves power to direct the trustee as to the making of investments or the exercise of other particular powers, or power to appoint a substituted trustee.”
 

 The donor in his lifetime did not revoke the trust, did not withdraw any of the principal trust funds except to replace weak securities with sound ones or with equivalents under reorganization plans. In fact, in each such instance he added additional funds of his own to the trust fund. Furthermore, he created this trust partially, if not primarily, for the protection of his wife and daughter for whose security he apparently exhibited the deepest concern. To deny the integrity of the trust or to create the relationship solely for his own benefit would be to defeat the rights not only of the ultimate beneficiary but of the wife and daughter as well, a result which, judged from all the circumstances, was foreign to his mind. In truth, there does not appear in this record a single act on the part of the donor which was inconsistent with the creation of a
 
 bona fide
 
 express trust which became effective in the lifetime of the donor and which vested a present interest in the beneficiaries. Such interest, it is true, might have been divested by the donor in his lifetime, but that right of divestiture died with him unexercised.
 

 The record clearly discloses the settled intent and purpose of Judge Conner to divest himself of this property for the benefit of persons and institutions which were dear to his heart. The observation once made by Mr. Justice Holmes concerning the interpreta
 
 *62
 
 tion of written instruments to the effect that “a page of history is worth a volume of logic, ’ ’ has peculiar and forceful application to the situation here presented.
 

 The statement in the trust instrument to the effect that at the donor’s death the trust should become absolute, does not, in the opinion of the court, mean that title did not pass to the trustee or that the transfer to the trustee was not to become a trust until after his death. It undoubtedly means that the conditions subsequent, attached to the trust, such as his power to revoke or designate another beneficiary, came to an end at the donor’s death and that the other provisions of the trust which were to take effect at his death were then to become operative.
 

 The. third paragraph of the trust instrument provides that in the event of the donor’s death without his having designated the ultimate beneficiary, the accumulated trust fund should be transferred and delivered “to such institution, charity, corporation, individual, or individuals, as my said wife shall, before her death, designate in a writing addressed to and delivered to said trust company.” It is claimed that this attempted grant of a power to his wife to designate an ultimate beneficiary without granting such power through a will or without requiring it to be exercised by her through the medium of a will, renders such attempt void; and that since the exercise of the power was not limited to the designation of a charity as the beneficiary, the grant of power in effect attempted to authorize the wife to make a will for the donor, which the law will not permit.
 

 If the exercise of a power created by a living trust instrument is invalid, it must be on the theory that it authorizes the donee of the power to make a will for the donor in violation of the Statute of Wills. It is true that until recent times powers were generally granted to the donee of the power through the medium of a will, but there can be no good reason why modern
 
 *63
 
 business usage may not be employed to accomplish ordinary business objectives. Here no title to real estate is involved. The provisions of the recording laws are, therefore, not called into operation. Since title to the securities passed to the trustee in the lifetime of the donor, there is no jurisdiction in the Probate Court to administer the property of the trust as a part of the donor’s estate. Here the trust instrument which conveyed the title of the securities to the trustee, like a bill of sale, clearly designated the manner in which the power should be exercised, namely, through the delivery of a letter by the donee of the power to the trustee designating the so-called ultimate beneficiary, and if the designation had been clearly and unequivocally made as provided in the instrument itself, the question of its legality, doubtless, would not have arisen. The fact that a power of appointment is made in a trust deed, to be exercised after the donor’s death, does not make it testamentary in character or void.
 

 Counsel for Dartmouth College urgently insist that John S. Conner had no right by instrument
 
 inter vivos
 
 to give his wife the power to act on his behalf, after his death, in selecting a beneficiary who should receive his property, because such a provision was testamentary in character and void. This doctrine, if valid, would redound to the benefit of Dartmouth College, since, if the power attempted to be given is invalid, the designation of Dartmouth College by the donor in the trust instrument before his death would control. More specifically, it is claimed that an estate created by the exercise of a power of appointment, takes effect as if created by the instrument conferring the power and that the beneficiary takes title under the donor and not under the donee (49 Corpus Juris, 1305, Section 150;
 
 Wills
 
 v.
 
 Cowper,
 
 2 Ohio, 124; 32 Ohio Jurisprudence, 121, Section 20), and that since the property comes from the donor and not from the donee it can be transferred by the former only in accordance with
 
 *64
 
 the laws of Ohio requiring either a deed designating the grantee or a will designating the beneficiary.
 
 Phipps
 
 v.
 
 Hope, Admr.,
 
 16 Ohio St., 586;
 
 Union Trust Co.
 
 v.
 
 Hawkins, Admr.,
 
 121 Ohio St., 159, 167 N. E. 389, 73 A. L. R., 190.
 

 In the opinion of this court, the trust instrument executed by John S. Conner does not offend against this rule. The trust instrument provides for certain life interests or estates, and then provides that in default of a different designation by the donor himself in his lifetime, or by his wife as donee of the power during her lifetime, Dartmouth College should be the ultimate beneficiary. Thus the interest of Dartmouth College in the fund became a vested remainder following the life estates, subject to be divested by the donor during his lifetime or by his wife after his death by exercising the power granted to her. Kales on Estates —Future Interests — (2 Ed.), 355, Section 332;
 
 Doe d. Willis
 
 v.
 
 Martin,
 
 4 T. R., 39, 100 Eng. Rep. (Rep.), 882, decided in 1790;
 
 Lambert
 
 v.
 
 Thwaites, 2
 
 L. R. (Eq. Cas.), 151 (1866). See, also, 1 Simes on Law of Future Interests, 134, Section 80.
 

 Some claim is made that a present power of appointment in the wife was not made by the trust instrument because Judge Conner reserved for his lifetime the right to name the ultimate beneficiary himself. It is admitted that a donee of a power properly delegated may exercise the power after the death of the donor, but it is claimed that'the delegation must be completed in the lifetime of the donor or it becomes a testamentary act.
 

 A careful reading of item 3 of the trust instrument shows that the appointment of the wife to a power was created simultaneously with the execution of the trust instrument, and she expressed her “knowledge of the purpose and contents of this instrument, and of her acquiescence therein and consent thereto” by signing an acknowledgment at the foot of the original instru
 
 *65
 
 ment. It is true that the exercise of the power to which she was appointed was made conditional on the failure of Judge Conner to make a designation of the ultimate beneficiary in his lifetime, but this did not militate against her appointment in his lifetime with authority to act after his death in case the designation had'not already been made.
 

 As above stated, however, if the attempt of Judge Conner to appoint his wife to a power failed for any reason, it follows that there was no designation of an ultimate beneficiary by written letter to the trustee. In that event the terms of the trust instrument would control to the effect that in case of failure of both himself and wife to make such designation, the ultimate beneficiary should be Dartmouth College. ■
 

 This discussion also disposes of another objection made concerning the validity of the trust. This objection relates to the vagueness or uncertainty as to the character of the beneficiary which might be the recipient of the exercise of the power. Where, however, the remainder is created in a definite beneficiary subject to the exercise of a power of appointment, the donee having mere option to appoint another or not as he sees fit, the class of permissible appointees is not required to be definite and certain, provided a definite person is ultimately designated by the donee of the power. If the power is not exercised, the vested estate of the remainderman is unaffected. If it is exercised, a definite and certain remainderman is substituted in place of the divested remainderman. In this respect the courts make a distinction between a collateral power giving the donee the power of selection among numerous suggested beneficiaries which is held valid, and a fiduciary power in the trustee to select a beneficiary out of a class which is held to be indefinite, uncertain and invalid.
 
 Clark et al., Trustees,
 
 v.
 
 Camphell,
 
 82 N. H., 281, 133 A., 166, 45 A. L. R., 1433;
 
 Tilden
 
 v.
 
 Green et al., Exrs.,
 
 130 N. Y., 29, 28 N. E., 880, 14
 
 *66
 
 L. R. A., 33;
 
 In re Park
 
 (1932), 1 Ch., 580; 3 Restatement of Law of Property, 1842, Section 323, comment
 
 h; McKallip’s Estate,
 
 324 Pa., 438, 188 A., 343, 108 A. L. R., 1095;
 
 Greenway
 
 v.
 
 Irvine,
 
 235 Ky., 363, 31 S. W. (2d), 606;
 
 Stewart
 
 v.
 
 Morris,
 
 202 Ala., 113, 79 So., 579.
 

 This trust has been in operation for more than 30 years, during which time no interested person has attacked it for invalidity, nor is there now made by the pleadings in this case any attack upon the validity of the trust instrument, or the trust sought to be created under it. The trust was not revoked by the donor in his lifetime and the power under it was exercised for a charitable purpose. The only question really presented by the record in this case is : What ultimate beneficiary has been designated by the donee of the power?
 

 There is no dispute in the facts as to what was done by the donee of the power in her attempt to exercise it. The legal effect of her acts, in view of the authority granted by the trust instrument, is alone to be considered. The right of designation was “to such institution, charity, corporation, individual, or individuals, as my said wife shall, before her death, designate in a writing addressed to and delivered to said trust company. But in case both I and my wife should die before having so designated
 
 in writing
 
 the beneficiary of said property, then said trust company shall assign, transfer, make over, deliver, and pay over all of said property to Dartmouth College of Hanover, New Hampshire, the same to be forever kept separate from other funds and property of said college, and to be known and designated as the ‘John Sanborn Conner Fund,’ the income alone ever to be used, and that only in assisting worthy students to obtain their education at said college * * (Italics ours.)
 

 The donor’s letter of December 24, 1910, six months after the execution of the trust instrument, addressed to his wife, was with reference to Dartmouth and what
 
 *67
 
 students of specified departments or colleges of Dartmouth should he preferred as recipients of the income on the basis of loans to such students. These students, it is clear, were not named as beneficiaries of the trust but of the income arising from the administration of the trust. On September 21, 1914, the donee-wife transmitted this letter to the trust company with one of her own designating Dartmouth as the ultimate beneficiary. Her letter, coupled with the letter of the donor, certainly made it clear that Dartmouth College was intended to be the real beneficiary and not the students .as indicated in the opinions of the Common Pleas Court and the Court of Appeals in this case. Since this expression with reference to students was in the same letter in which she had already designated Dartmouth College as the legal beneficiary, it does not support a claim that she regarded or made the students the beneficiaries except in the sense that they would be the' recipients of the benefit through Dartmouth College; furthermore, by all rules of law as to designation and identification of direct donees or beneficiaries of a fund, this indefinite designation of students as beneficiaries would be void for uncertainty for the reasons hereinbefore stated.
 
 Cope
 
 v.
 
 Cope,
 
 45 Ohio St., 464, 15 N. E., 206;
 
 Dirlam, Exr.,
 
 v.
 
 Morrow,
 
 102 Ohio St., 279, 131 N. E., 365;
 
 Nichols
 
 v.
 
 Allen,
 
 130 Mass., 211, 39 Am. Rep., 455.
 

 Prom a study of the trust instrument we think it cannot be said that it gave the donee authority to make successive designations. The words of authority are “before her death,” not “from time to time,” as suggested, in the brief of counsel for Berea College. On the other hand, she did not, in her letter of September 21,1914, reserve the right of subsequent designation of a beneficiary, but attempted to reserve only a right to modify the order of preference among the students to be benefited by temporary loans from the income of the fund. This matter of preference as to students was
 
 *68
 
 suggested by the written expressions of Judge Conner on this subject in his letter of December 24, 1910', and it seems clear that no students but students of Dartmouth College were in the donee’s mind when she made this minor reservation which, in fact, had nothing to do with the designation of the ultimate beneficiary. That she had Dartmouth students in mind when she exercised the powers in 1914 is evident from the fact that she referred to “students and persons, who are to receive the benefit of the education provided for in the foregoing letter,” referring to Judge Conner’s letter which designated Dartmouth College students, and from the fact that she made no mention of students as beneficiaries when she later attempted to revoke the designation. Furthermore, Mrs. Conner’s second letter to the trust company exhibits a feeble attempt to interpret certain words in her first letter to amount to a reservation of a right to revoke.
 

 The situation of the donee of the power in this case is analogous to the authority of an agent to perform an act for his principal which confers a benefit on a third person to be specifically selected by the agent. When the agent once acts, the beneficiary has a vested interest in the beneficence of the principal and the authority of the agent is at an end unless the principal himself has specifically conferred further authority.
 

 In our opinion, the trust instrument gave the donee no authority to revoke a designation once made, nor did she reserve a right to revoke her own designation of Dartmouth College, except possibly as to certain classes of students of that college as the recipients of loans. This was in no sense a reservation of the right to revoke the beneficiary generally. By her unequivocal act in designating Dartmouth College she exhausted the power given to her. The law is clear on this subject. The general rule is: If the donor merely gives to the donee the power to appoint, without expressly authorizing him to revoke an original appointment and
 
 *69
 
 make a new one, nevertheless, if the donee in making an appointment does reserve the right to revoke, he may thereafter exercise such right and make a new appointment. On the other hand, where the donor confers on the donee the power to appoint, with the right to revoke the initial or several successive appointments, and make new appointments, nevertheless, if the donee exercises the right by making an appoint • ment in the manner provided in the will or trust instrument, without reserving the right to revoke, he may not thereafter revoke and make a new appointment. 49 Corpus Juris, 1258 and 1307, Sections 29 and 157; 3 Restatement of Law of Property, 2026, Section 366.
 

 Judgment reversed and final judgment for appellant.
 

 Zimmerman and Bbttman, JJ., concur.
 

 Williams, J., concurs in the syllabus and judgment.
 

 Weygandt, C. J., Turner and Matthias, JJ., dissent.